UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY A. MOORES,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-2334-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 17 & 18. For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

I. <u>Background</u>

In August 2010, plaintiff filed an application for a period of disability and DIB. Administrative Record ("AR") 154-60. The application was denied initially and upon reconsideration. *Id.* at 104-06, 108-09. A hearing was subsequently held before administrative law judge Amita Tracy ("ALJ Tracy"). *Id.* at 39-61. On September 8, 2008, ALJ Tracy issued a

1

decision finding that plaintiff was not disabled under section 1614(a)(3)(A). Plaintiff sought review with the Appeals Council, which denied review. *Id*. at 1-7. Plaintiff then sought judicial review from this court, and on March 23, 2016, the case was remanded for further administrative proceedings. *Id*. at 687-99.

While that case was pending before the court, plaintiff filed a new application for period of disability and DIB, as well as an application for SSI. *Id*. at 814-26. Upon remand of the initial application, plaintiff's claims were consolidated. *Id*. at 707. Thereafter, a hearing was held before administrative law judge Mary Beth O'Connor (the "ALJ"). *Id*. at 599-646.

On July 12, 2017, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id*. at 565-80.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential

The ALJ made the following specific findings:

1. The claimant remained insured for Title II disability benefits through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since September 17, 2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

\* \* \*

3. The claimant has the following severe impairments: Lyme disease, chronic fatigue syndrome, bipolar disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to performing simple, repetitive, routine tasks that do not involve fast paced production work. She should never interact with the public and can have occasional interaction with coworkers.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on [in] 1969 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

evaluation process proceeds to step five. *Id.*

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 17, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 567-80.

Plaintiff subsequently filed a written exception to the ALJ's decision, but it was untimely.[2] *Id*. at 589-92. As a result, the ALJ's July 12, 2017 decision became the final decision of the Commissioner after the expiration of the sixty-period in which the Appeals Council was permitted to assume jurisdiction. 20 C.F.R. §§ 404.984, 416.1484(d); *See Walker-Butler v. Berryhill*, 857 F.3d 1, 3-4 (1st Cir. 2017) ("The Appeals Council's inaction triggers the finality of the decision (without need for any mailing of a notice of final decision), and a claimant then has sixty days from that date to commence a civil action.").

II.     Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

---

[2] Once an ALJ issues a decision after remand from the district court, the plaintiff has thirty days to file exceptions with the Appeals Council, requesting the Appeals Council review the ALJ's decision. 20 C.F.R. §§ 404.984,(b) 416.1484(b). Even when exceptions are not timely filed, the Appeals Court may decide to assume jurisdiction within sixty days of the ALJ's decision. If it does not assume jurisdiction within that time, the ALJ's decision becomes the final decision of the Commissioner. 20 C.F.R. §§ 404.984(d), 416.1484(d); *see Walker-Butler*, 857 F.3d at 3-4.

4

Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. Analysis

Plaintiff contends that the ALJ erred in (1) failing to provide legally sufficient reasons for rejecting the opinions of her treating and examining physicians and (2) discounting her subjective complaints absent clear and convincing reasons. ECF No. 17-1 at 26-41.

A. The ALJ's Treatment of Medical Opinion Evidence

Plaintiff argues that the ALJ did not provide an adequate basis for rejecting the opinions of treating physician Dr. Eleanor Hynote and examining physician Dr. Raphael Stricker. ECF No. 17-1 at 26-37.

1. Relevant Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally

5

is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

2. Background

In June 2013, Dr. Hynote completed a medical source statement, which indicated that she had been treating plaintiff since March 2007. AR 546-52. Dr. Hynote diagnosed plaintiff with Lyme disease and related tick-borne diseases. *Id*. at 546. It was Dr. Hynote's opinion that plaintiff could sit for 45 minutes at one time and less than two hours total in an eight-hour workday, but she must keep her legs elevated above her heart while sitting. She further opined that plaintiff could stand for ten minutes at one time and less than two hours in an eight-hour workday; walk two to three blocks without rest or severe pain; occasionally lift 20 pounds; occasionally climb stairs; rarely twist, stoop, and crouch/squat; and never climb ladders. *Id*. at 549-50. Dr. Hynote also concluded that plaintiff needs to shift positions at will; walk around for 15 minutes every hour; and take frequent unscheduled breaks, each lasting between two to three hours. *Id*. at 550. She also determined that plaintiff was limited to using her right hand for gross and fine manipulation for about 25 percent of the time in an eight-hour workday, while her left hand could be used for only 10 percent of the time. *Id*. at 551. She also stated plaintiff would be off task 25 percent or more of the workday and would miss more than four days of work per month. *Id*. at 551-52.

Plaintiff's counsel arranged for plaintiff to be evaluated by Dr. Raphael Stricker in October 2016. AR 1524. Several months after the evaluation, Dr. Stricker composed a letter he addressed to the Social Security Administration noting that plaintiff's lab testing was consistent with persistent Lyme disease, Ehrlichiosis, and Rickettsiosis. *Id*. at 1524-25. He also provided background information regarding Lyme disease and other tick-borne diseases, summarized their

common symptoms, and opined that plaintiff's subjective complaints were consistent with persistent, disseminated Lyme disease and other tick-borne illnesses. *Id*. at 1225-26. Dr. Stricker also completed a medical source statement that detailed his opinion regarding plaintiff's functional limitations. *Id*. at 1527-33. It was his opinion that plaintiff could sit, stand, and walk for a total of one hour each in an eight-hour workday; sit for 15 minutes at one time; stand for 5 minutes at one time; and walk zero minutes at one time. *Id*. at 1529-30. He concluded that plaintiff could never perform repetitive fine or gross manipulation, push or pull, lift or carry any amount of weight; bend, squat, crawl, climb, or reach above shoulder level; or repetitively move her feet. *Id*. at 1530-31. Dr. Stricker further opined that plaintiff was totally precluded from driving automotive equipment; working around dust, fumes, gases, unprotected heights, moving machinery; and working in environments with marked changes in temperature or humidity. *Id*. at 1532. He further opined that plaintiff needs to take a 15 to 30-minute break every 15 minutes, and she will likely miss more than four days of work per month. *Id*. at 1532-33.

The record also contains opinions from two non-examining physicians. Dr. Jerry Thomas reviewed the medical records submitted in connection with plaintiff's initial application for benefits and concluded that plaintiff's physical impairments were non-severe. AR 447. In reaching that conclusion, Dr. Thomas noted that there were no medically determinable impairments noted in the medical record. *Id*. Non-examining physician Dr. R. Rahnamay reviewed the medical evidence submitted in relation to the subsequently filed applications and opined that: plaintiff could lift 50 pounds occasionally and 20 pounds frequently, stand and/or walk about six hours in and eight-hour workday, sit for about six hours in an eight-hour workday, but was not otherwise functionally limited. *Id*. at 721.

In assessing plaintiff's RFC, the ALJ gave minimal weight to Dr. Hynote's opinion and purported to give partial weight to Dr. Stricker's opinion.[3] *Id*. at 573-75. The ALJ noted that the record includes opinions from non-examining sources that were less restrictive, but she did not discuss the specific opinions nor state the weight, if any, each was given. *Id*. at 574.

---

[3] Despite assigning Dr. Stricker's opinion partial weight, the ALJ's residual functional capacity determination did not include any of the physician's assessed limitations.

7

### 3. Dr. Hynote

The ALJ provided two separate reasons for affording only minimal weight to Dr. Hynote's opinion. First, the ALJ found that Hynote's opinion was not supported by longitudinal evidence, which does not reflect significant abnormal clinical findings. AR 573-74. An ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.2 008).

Dr. Hynote's treatment notes consist largely of recitations of plaintiff's subjective complaints, with virtually no objective findings. Although they document plaintiff's general complaints of fatigue and pain, the records do not detail significant issues with sitting, lifting, or carrying items that could corroborate the assessed limitations. As noted by the ALJ, Dr. Hynote's opinion that plaintiff must always elevate her legs when sitting finds no support in her treating notes. *See* AR 550. There is no indication that plaintiff was advised to elevate her legs, or that plaintiff reported a need to elevate her legs. Likewise, the ALJ properly concluded that there was no objective support for Dr. Hynote's opinion that plaintiff had a limited ability to use her hands. *See id*. at 551. This lack of congruency between Dr. Hynote's opinion and her treatments was a sufficient basis for rejecting her opinion. *See Tommasetti*, 533 F.3d at 1041 (9th Cir. 2008) ("Dr. Nachenberg's medical records do not provide support for the limitations set out in the Questionnaire. The incongruity between Dr. Nachenberg's Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting" the physician's opinion).

Plaintiff contends, however, that her allegations are supported by objective findings. She argues that the record contains laboratory testing confirming Lyme disease,[4] and that its

---

[4] The parties quarrel over whether the laboratory test in the record are sufficient to confirm a diagnosis of Lyme disease. ECF No. 17-1 at 29; ECF No. 18 at 21-22. The Commissioner contends that the testing performed by Dr. Hynote and Dr. Stricker do not conform to the standards promulgated by the Center for Disease Control. ECF No. 18 at 20-21. Plaintiff points out that Dr. Stricker is an expert on Lyme disease and that his interpretations of the lab results are sufficient to establish her diagnosis of Lyme disease. ECF No. 17-1 at 29. This court has previously sided with the argument advanced by plaintiff. *See Moores v. Colvin*, 173 F. Supp. 3d 989, 997 (E.D. Cal. 2016). However, the dispute is academic here, given the ALJ's explicit finding that "Lyme disease was confirmed through positive test results." AR 573.

symptoms include fatigue and pain. She further contends that because such symptoms "are notoriously difficult, if not impossible, to observe externally," the ALJ's reliance on objective findings is misplaced. *Id.* ECF No. 17-1 at 30-32.

Plaintiff's argument assumes that Dr. Hynote's opinion was based only on symptoms that cannot be objectively measured or observed. The assumption, however, is not supported by the record. Dr. Hynote specifically stated that plaintiff's need to elevate her feet was due to swelling and numbness in her lower extremities. Her treatment notes, however, do not reflect reports or observations concerning swelling or tingling in her lower extremities. *See* AR 406-409, 456-60, 470-473, 478-500, 537-41. Plaintiff's complaints of pain and fatigue also fail to adequately explain other limitations assessed by Dr. Hynote. For example, Dr. Hynote specifically opined that plaintiff's left hand was more impaired than her right. AR 551. It is not clear how general fatigue would impact one more than the other. Dr. Hynote's assessment does not provide an answer, and it is not apparent from her treatment notes.

The ALJ's remaining reason for given minimal weight to Dr. Hynote's opinion was that it was inconsistent with plaintiff's conservative treatment, which consisted almost exclusively of homeopathic and holistic remedies.[5] AR 574. An ALJ may reject an opinion that is inconsistent with the conservative nature of the claimant's care. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Plaintiff argues that she was proscribed "a cocktail of antibiotics," which is not appropriately characterized as conservative given that it was prescribed to treat Lyme disease. ECF No. 19 at 11-12. The ALJ specifically acknowledged that plaintiff was initially prescribed antibiotics in 2010, but was unable to continue that treatment due to insurance issues. AR 571.

---

[5] Plaintiff identifies other reasons she believes the ALJ provided for rejecting Dr. Hynote's opinion. For instance, she argues that the ALJ improperly rejected the opinion because "'there are non-examining opinions in the record' that do not find limitations as severe as Dr. Hynote. ECF No. 17-1 (quoting AR 574). In making that statement, the ALJ was merely observing that there were other medical opinions in the record. After making that statement, the ALJ correctly noted that while treating opinions are generally entitled to more weight than an non-examining opinion, the weight it ultimately receives "depends on [its] consistency with the medical evidence of record and [whether it contains a] well founded explanation." AR 574.

However, in March 2012, plaintiff specifically stated she did not want antibiotics and instead wanted to pursue homeopathic treatment. *Id*. at 539. Plaintiff began receiving medical treatment through Kaiser in September 2013, and continued to receive treatment from that provider through November 2016. *Id*. at 888-1143, 1162-1523. During that time, however, plaintiff continued to treat her Lyme disease with homeopathic remedies. *Id*.

As noted by plaintiff, on one occasion she informed her provider that "she wants to do something about" her Lyme disease. AR 968. But that was closest she came to requesting treatment during her three years with Kaiser. Furthermore, other treatment records demonstrate plaintiff's preference for homeopathic care over more conventional treatments. *See, e.g., id*. at 1171 (March 2015 showing plaintiff was "focusing on herbal and 'natural' remedies"); 1245 (June 2015 treatment note stating plaintiff "doesn't wish to consider psych meds at this time."); 1067 (August 2015 note stating that plaintiff was doing pretty well and "working on holistic approach.").

Accordingly, the conservative nature of plaintiff's care was a legally sufficient basis for discounting Dr. Hynote's opinion.

### 4. Dr. Stricker

With respect to Dr. Stricker, the ALJ provided several reasons for discounting his opinion. First, she concluded that severe limitations Dr. Striker reported were not supported by plaintiff's conservative care. As set forth above, Dr. Stricker opined that plaintiff could perform virtually no exertional activities. Indeed, he opined that plaintiff could walk zero minutes at one time, and could not lift any amount of weight. AR 1530-31. Given the record evidence to the contrary, that level of impairment is simply not plausible, particularly in light of plaintiff's continued conservative treated with only homeopathic remedies.

The ALJ also properly concluded that Dr. Stricker's opinion was inconsistent with plaintiff's reported activities, including her ability to shop and drive a car. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (9th Cir. 1999) (holding that inconsistency with daily activities is a specific and legitimate reason to discount a physician's opinion).

/////

Plaintiff's ability to shop, even with difficulty, is not compatible with Dr. Stricker's opinion that plaintiff is unable to carry any amount of weight or use her hands for gross and fine manipulation. *See* AR 1530. Additionally, plaintiff's admission that she was able to drive a car to San Francisco (*id*. at 1478) cannot be squared with Dr. Stricker's conclusion that she can never use her "feet for repetitive movements, as in operating foot controls" (*id*. at 1530).

The ALJ also stated that "[i]t appears that Dr. Stricker, who conducted a one time examination, relied heavily on the claimant's statement." AR 575. "An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Given the severity of the limitations assessed, and the minimal treatment plaintiff has received, the only logical inference is that Dr. Stricker relied heavily, if not exclusively, on plaintiff's subjective complaint. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence").

Lastly, the ALJ also determined that Dr. Stricker's opinion was entitled to less weight because he "couched many of the limits with 'it appears' and 'can occur' rather than indicating these limits occur with a frequency that would impact claimant's ability to work." AR 575. The terms referenced by the ALJ appear in the letter Dr. Stricker addressed to the SSA. *Id*. at 1524-26. That letter did not include the specific functional limitations assessed by Dr. Stricker. Instead, it included general information regarding Lyme disease and plaintiff's diagnosis. Although this reason alone would not support the rejection of Dr. Stricker's opinion, it is supportive of the ALJ's first three reasons which were legally sufficient. Thus, any alleged error in reliance on this last reason was, at most, harmless. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases).

Plaintiff further argues that ALJ's rejection of Dr. Sticker's opinion was improper due to her failure to consider the factors set forth in 20 U.S.C. §§ 404.1527(c) and 416.927(c). Plaintiff contends that pursuant to those regulations Dr. Stricker's opinion is entitled to greater weight because he personally examined plaintiff, his opinion is consistent with Dr. Hynote's opinion, and he has expertise in treating Lyme disease. ECF No. 17-1 at 35.

District courts in this circuit, including this court, have uniformly held that an ALJ is not required to provide an explicit analysis of each of the factors detailed in §§ 404.1527(c) and 416.927(c). *See, e.g., Standen v. Berryhill*, 2017 WL 4237867, at * 7-8 (E.D. Cal. Sept. 25, 2017) (Brennan, E.); *Mulligan v. Berryhill*, 2019 WL 415035, at *1 (E.D. Cal. Feb. 1, 2019); *Torres v. Berryhill*, 2018 WL 1245106, at * 5 (S.D. Cal. Mar. 9, 2018); *Carbajal v. Berryhill*, 2018 WL 1517161, at *4 (C.D. Cal. Mar. 27, 2018). Instead, it need only be apparent from the ALJ's decision that the she considered and applied the appropriate factors. *Standen*, 2017 WL 4237867, at *8.

Here, it is clear that the ALJ consider the relevant factors. She noted the relationship between plaintiff and the two physicians, the frequency of encounters, and the consistency of the physicians' opinions with the medical evidence as a whole. AR 573-75. While the ALJ may not have acknowledged Dr. Stricker's specialization, the ALJ's decision clearly demonstrates that the factors were considered.

  B. The ALJ's Credibility Determination

    1. <u>Relevant Legal Standards</u>

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. *See id.* at 345-347. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.

12

*See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

        2.        <u>Discussion</u>

The ALJ provided the following summary of plaintiff's allegations:

> According to the claimant, she suffers constant pain, nerve pain, pain with movement that diminish attention, concentration, and completing tasks. She described difficulty with organizing her thoughts to complete a task, fatigue, and anxiety symptoms due to sensitivity to being around people and loud noises. She claims these symptoms are sufficiently severe to interfere with her ability to work.

AR 557.

The ALJ proffered two primary reasons for finding that plaintiff's allegations were not fully credible. First, the ALJ found that plaintiff's credibility was undermined by her ability to engage in a number of activities despite her alleged limitations. The ALJ noted that plaintiff described attending group therapy, going out for meals with friends, driving, shopping, researching holistic treatments, and performing volunteer service at a health food store. *Id*.

In evaluating a plaintiff's credibility an ALJ may consider that the plaintiff engaged in activities that are inconsistent with the alleged disabling symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). But the ALJ must be careful not to over rely on routine daily activities that are fairly limited and not obviously inconsistent with allegations of debilitating symptoms. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). Thus, these activities alone appear insufficient. But the ALJ provided additional reasons which are legally sufficient.

The ALJ gave reduced weight to plaintiff's credibility for the additional reason that her impairments were consistently treated conservatively. The conservative nature of plaintiff's treatment provides a clear and convincing reason for rejecting plaintiff's statements concerning the severity of her impairments. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). As discussed above, the record shows that plaintiff's allegedly disabling impairments were largely treated with homeopathic remedies that appear inconsistent with the severity claimed.

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: March 28, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE